## DROITCOUR v. KELLY.

(Court of Appeals of District of Columbia. Submitted November 21, 1922. Decided January 2, 1923.)

No. 1533.

Patents ⬥91(4)—Evidence held to show that junior party's earlier machine was not reduced to practice.

Evidence that junior party built a machine designed for separating sheets from a supply stack and carrying them to position, where they were picked up by the impression cylinder of a printing press, and this machine was operated for a time and then scrapped, and subsequently junior party devised another machine, for which a patent was secured without any claim being made covering the novel features of the earlier machine, held, in view of the accuracy with which such machine must operate, that the earlier machine was merely an abandoned experiment, and did not amount to a reduction to practice.

Appeal from the Commissioner of Patents.

Interference proceeding between Michael A. Droitcour and William M. Kelly. From a decision awarding priority to the latter, the former appeals. Affirmed.

Arthur E. Dowell, of Washington, D. C., for appellant.

Charles S. Grindle and James A. Watson, both of Washington, D. C., for appellee.

Before SMYTH, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. Appeal from a Patent Office decision in an interference proceeding, in which priority was awarded the senior party Kelly. The single count of the issue reads as follows:

"In a printing press, a cylinder, a feed table, mechanical means for advancing sheets to cylinder picking-up position on said table, said means com-

prising separately hinged upper and lower sections to permit the sections to have raising movements from operative position and one of said sections carrying the feed board."

As will be understood from this count, the invention is an improvement in an automatic feeder device in a printing press adapted to separate sheets from a supply stack and carry them to a position where they are picked up by the impression cylinder. Owing to the necessity for accuracy in the registration of each sheet, suitable registering mechanism must be associated with the feeder devices. By making the feeder device in two sections, superimposed when in operative position, but adapted to be swung upwardly and backwardly, it is possible to gain free access to the mechanism thereunder. This is one of the advantages of the invention.

It is in evidence that early in 1912 a machine was built for Droitcour which, it is contended, embodied this invention. But Kelly insists that this machine had no advancing means made up of two sections, within the meaning of the claim, and hence did not respond to the issue. The view we take of the case, however, renders it unnecessary to determine this question. The machine was operated for a time and then scrapped, and for more than a year thereafter Droitcour did nothing more relative to this particular invention. He did devise another and different machine, however, upon which he applied for a patent on January 8, 1912. This patent was later allowed. Meanwhile Kelly had entered the field and, on September 20, 1913, a machine embodying the invention was publicly exhibited.

Having in mind the degree of accuracy with which such a machine must operate, and the circumstances surrounding this case, we are convinced that the Droitcour machine of 1912 did not amount to a reduction to practice of this invention but, on the contrary, was nothing more than an abandoned experiment. This is another case where actions speak louder than words, and it is inconceivable that this machine, had it been successful, would have been scrapped, another machine devised and a patent application filed thereon, without any claim being made covering the claimed novel features of the earlier device. Upon this point the Examiner of Interferences said:

"Droitcour when asked in question 25, page 43, if his 1912 structure operated satisfactorily, failed to assert that it so operated. Malvig (Q. 20, p. 33) states that the sheets did not come through straight. Lane testified (Q. 30, p. 25) that it was necessary to rig up a cable with a weight to lift the upper movable section. Considering the accuracy and certainty required in feeding sheets to a printing press and the necessity of easy and quick manipulation of parts thereof, such testimony clearly indicates an unsuccessful device. Later it seems the feeder was taken off the press and the latter sold without the feeder. All the above witnesses agree that the feeder was destroyed or scrapped. * * * The company never built any others like it, nor does the record show that Droitcour later desired or attempted to build a similar device."

The Examiners in Chief, while convinced that "the construction of the 1912 machine was not a desirable one from a commercial point of view," nevertheless rule that this machine amounted to a reduction to practice. This tribunal, however, in our view, failed to give suffi-

cient weight to what followed the alleged successful operation of the machine. The Board conceded that if its ruling "of an actual reduction to practice by Droitcour in 1912 were not sustained, he would fail through lack of diligence and Kelly would be held to be the first inventor." The Assistant Commissioner concurred in this view, but placed his decision upon the ground that the 1912 machine did not respond to the issue.

We deem it unnecessary to review the evidence further, and affirm the decision upon the ground that the early efforts of Droitcour were abortive and that he was lacking in diligence when Kelly entered the field.

Affirmed.